**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01018-WJM-NYW

OWNERS ASSOCIATION OF THE BELLA VISTA VILLAS, INC.,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

---

## ORDER

---

Magistrate Judge Nina Y. Wang

    This civil action comes before the court on Defendant Owners Insurance Company's ("Defendant" or "Owners") Expedited Motion to Disqualify Clay Morrison From Serving as an Appraiser ("Motion to Disqualify"). [#21, filed August 26, 2016].[1] The Motion to Disqualify was referred to this Magistrate Judge pursuant to the Order Referring Case dated June 22, 2016 [#15] and the memorandum dated October 11, 2016 [#32]. Having reviewed the Motion to Disqualify, the case file, and the applicable law, and considered the comments offered during the November 16, 2016 Motion Hearing and Status Conference, IT IS ORDERED that the Motion to

---

[1] Where the court refers to the filings made in Electronic Court Filing ("ECF") system in this action, it uses the convention [#__].

Disqualify is DENIED, with leave to raise issues related to the impartiality of an appraiser, should any such issues persist, through a motion to vacate the appraisal award.[2]

## BACKGROUND

### Procedural History

Plaintiff Owners Association of the Bella Vista Villas, Inc. ("Plaintiff" or "Bella Vista") initiated this civil action on May 4, 2016, asserting claims for breach of contract and common law and statutory bad faith arising out of Insurance Policy 104632-74638640 (the "Policy") for property located at 4002-4286 E. Hinsdale Cir., Centennial, CO 80122 (the "Property"). Bella Vista alleges that Owners failed to properly investigate its claim for damage resulting from a September 2014 wind and hail storm and failed to pay in full the covered benefits necessary for Plaintiff to repair that damage. *See* [#1].

On June 30, 2016, the Parties filed a Joint Motion to Administratively Close Case pursuant to this District's Local Rule 41.2, to allow them "to complete the appraisal process in an expedited manner before the commencement of any litigation." [#18 at 2]. The Parties represented they were finalizing an agreement to govern the appraisal process ("Agreement") and that the Agreement would:

> (i) ensure that the appraisers provide adequate detail regarding disputed costs to facilitate review of their work; (ii) permit counsel to work collaboratively; (iii) complete the appraisal in an orderly and efficient fashion; (iv) avoid discovery or additional appraisals; (v) increase the likelihood of a valid appraisal outcome; and

---

[2] This court disposes of the Motion by order pursuant to 28 U.S.C. § 636(b)(1)(A), on the basis that the disqualification of Mr. Morrison does not remove any claims or defenses presently asserted by the Parties. *See Gold v. State Farm Fire & Cas. Co.*, No. 10–cv–00825–MSK–MJW, 2010 WL 3894141 (D. Colo. Sept. 30, 2010) (disqualifying appraiser by order). *But see Nationwide Property & Cas. Ins. Co. v. Templo Aposento Alto Assembly of God*, No. G–11–010, 2011 WL 7396197 (S.D. Tex. Dec. 2011) (recommending that motion to disqualify appraiser be granted).

    (vi) effectuate the subject insurance policy's requirement that party-appointed appraisers be competent and impartial.

[*Id.*] The Parties asked that the case be subject to reopening for good cause, including but not limited to "a disagreement between the appraisers on the appointment of an umpire." [*Id.*] The Parties also stipulated to tolling during the administrative closure any statutes of limitations that might apply to Plaintiff's claims, and that Defendant need not file a responsive pleading at that time. [*Id.*] The presiding judge, the Honorable William J. Martinez, granted the Joint Motion to Administratively Close Case on July 1, 2016. *See* [#19].

  On August 26, 2016, Defendant filed an opposed Expedited Motion to Re-Open Case asserting that it had objected to Plaintiff's disclosure of Mr. Clay Morrison as Plaintiff's appraiser, and that Plaintiff had "refused to accept the validity of Owners' objections to Mr. Morrison and stated its intent to proceed unilaterally with the appraisal process." [#20 at 3]. Defendant simultaneously filed the Motion to Disqualify. *See* [#21]. Plaintiff filed responses to the Motion to Re-Open Case and the Motion to Disqualify on September 16, 2016. *See* [#22; #23]. Defendant filed replies on September 28, 2016. *See* [#24; #25]. Plaintiff thereafter moved for leave to file a surreply to the Motion to Disqualify, which this court denied. *See* [#29; #37].

  On October 11, 2016, the court granted the Motion to Re-Open Case for good cause shown. *See* [#31]. On November 16, 2016, this court held a Status Conference and Oral Argument on the Motion to Disqualify, and took the matter under advisement. The court requested that Plaintiff provide a copy of the fee agreement between Plaintiff and Mr. Morrison, which was filed on November 18, 2016. *See* [#39]. On November 28, 2016, Defendant filed a Response to the fee agreement. *See* [#40].

### The Policy and Agreement

The Policy instructs in relevant part that if the Parties disagree on the value of the property or the amount of the loss, either may make a written demand for an appraisal:

> In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding…

[#21-1 at 2]. The Policy, however, does not include any definition of "impartial," or what procedure is applicable to challenge the selection of an appraiser. [*Id.*]. Nor does the Policy address what authority a court has to disqualify an appraiser whom the other party challenges. [*Id.*].

The Agreement that the Parties entered into in July 2016 similarly does not define "impartial"; however, it provides further guidance as to which individuals may not serve as an appraiser:

> An individual who has a known, direct, and material interest in the outcome of the appraisal proceeding or a known, existing, and substantial relationship with a party or its representatives or agents may not serve as an appraiser. An appraiser does not have a known, direct, and material interest in the outcome of the appraisal proceeding or a known, existing, and substantial relationship with a party or its representatives or agents merely because an appraiser or his employer is currently performing or has previously performed appraisals for that party.

[#21-2 at 2, ¶ 3]. Additionally, the Agreement sets forth disclosure requirements for the Parties, so that each party may assess an appraiser's impartiality:

> Each appraiser and counsel for whose client the appraiser has been retained must, after making a reasonable inquiry, disclose to all parties and any other appraiser any known facts that a reasonable person would consider likely to affect the appraiser's impartiality, including (a) a financial or personal interest in the outcome of the appraisal; and (b) a current or previous relationship with any of

> the parties (including their counsel or representatives) or with any of the participants in the appraisal proceeding, including licensed public adjustors, witnesses, another appraiser, or the umpire. Each appraiser shall have a continuing obligation to disclose to the parties and to any other appraiser any facts that he or she learns after accepting appointment that a reasonable person would consider likely to affect his or her impartiality. If an appraiser discloses a fact required to be disclosed pursuant to this paragraph and a party objects to the appointment or continued services of the appraiser the objection may be a ground for vacating an award made by the appraiser…

[*Id.* at 2, ¶ 4]. The Parties agreed that they and their counsel would "make every reasonable effort to ensure that the appraisal process proceeds in accordance with this Agreement." [*Id.* at 3, ¶ 11]. Finally, they agreed that the Agreement would be construed under the laws of the State of Colorado. [*Id.* at 4, ¶ 16].

Owners's Objection to Mr. Morrison

On August 9, 2016, Owners, through its counsel, objected to Bella Vista's appointment of Mr. Morrison as appraiser based on information Owners asserts it independently discovered and which Bella Vista had an obligation to disclose. *See* [#20-2]. The following is a summary of Owners's various objections. In a 2010 *NAPIA Bulletin* article Mr. Morrison authored, he described his relationship with the insurance company State Farm when he operated "a successful insurance restoration company," accused State Farm of pressuring him for his "help in rectifying the consumer's entitlement mentality," and blamed State Farm for the demise of his insurance restoration business in retaliation for his failure to cooperate. [*Id.* at 1]; *see also* [#21-4]. Mr. Morrison asserts on his website that while, "[i]n theory, the insurers are required to maintain the interests of the insured at an equal level with their own interests…in the current economy where making money is everything…claims payments are more often delayed, denied and disputed by insurers…" [#20-2 at 2]; *see also* [#21-8].

Mr. Morrison's curriculum vitae lists him as an Insurance Appraiser & Umpire Association ("IAUA") Certified Appraiser and Umpire, *see* [#21-3 at 5]; however, counsel for Owners could not locate him in IAUA's current directory of certified appraisers and umpires. [#20-2 at 2]. Mr. Morrison claims he is a Windstorm Insurance Network ("WIND") Certified Windstorm Umpire and Certified Windstorm Appraiser, *see* [#21-3 at 5]; counsel for Owners could not locate him in WIND's current directories of certified appraisers and umpires. [#20-2 at 2]; *see also* [#21-17]. Mr. Morrison also claims he is a Texas Department of Insurance ("TDI") Approved TWIA Umpire, *see* [#21-3 at 5]; counsel for Owners could not locate him on TDI's current roster of approved umpires. [#20-2 at 2]; *see also* [#21-16]. Mr. Morrison identifies himself in his curriculum vitae and on his website as licensed in a number of states, including Georgia, Oklahoma, Louisiana, and Mississippi. *See* [#21-3 at 5]. Owners's counsel's review of the Georgia and Oklahoma public adjuster licensing records revealed that Mr. Morrison's Georgia license is inactive and his Oklahoma license is expired, and counsel's further investigation revealed that Mr. Morrison's Louisiana license is cancelled and that there is no record of licensure in Mississippi. *See* [#20-2 at 2]; *see also* [#21-18; #21-19]. Owners contends that these lapses in licensure reflect a disinterest in professional development, in favor of anti-insurance industry advocacy.

Owners also perceives an obvious bias against insurers by Mr. Morrison. Mr. Morrison was retained by the insured property owner "in the vast majority" of known cases in which he has served as an expert, public adjustor, or appraiser, *see* [#20-2 at 2]; *see also* [#21-15]; and a law firm, the Merlin Law Group ("Merlin"), represented the insured in "a large number" of those cases, including in an appraisal case before another court in this District where the Honorable

Lewis T. Babcock found that Merlin had acted in bad faith. [#20-2 at 2 (citing *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, --- F. Supp. 3d ----, 2016 WL 4132186, (D. Colo. Aug. 1, 2016)).[3] Owners further asserts that Mr. Morrison has testified alongside an attorney from Merlin before the Texas legislature opposing proposed laws that would regulate public adjustors and insurance bad faith claims. [#20-2 at 2]; *see also* [#21-22]. Mr. Morrison is featured as an expert on the website of insurance consumer advocacy and lobbying group United Policyholders ("UP"). *See* [#21-20]. UP "has filed hundreds of amici briefs on behalf of consumers in multiple jurisdictions against insurance companies, including Owners," [#20-2 at 3]; and Chip Merlin of Merlin is on the UP board of directors. *See* [*id.*] Mr. Morrison is a past president and member of the Texas Association of Public Insurance Adjustors ("TAPIA"), whose general counsel is a Merlin attorney. [#20-2 at 3]; *see also* [#21-11; #21-14]. Mr. Morrison was listed as a member of the Florida Association of Public Insurance Adjustors ("FAPIA") as recently as March 2016. *See* [#21-9]. FAPIA was "created, financed and governed by public adjustors and plaintiffs' attorneys in the State of Florida including…the Merlin Law Group and its attorneys." [#20-2 at 3]. Finally, Owners asserts, Merlin has featured Mr. Morrison as a speaker and expert panel member in its seminars; and attorney Chip Merlin has presented with Mr. Morrison at TAPIA conferences, including an October 2015 presentation entitled "Biased Appraisers and What You Put on Social Media Can Hurt." [#20-2 at 3]; *see also* [#21-12 at 2].

---

[3] Plaintiff's law firm disavows any affiliation with Merlin and Defendant does not suggest otherwise. *See* [#23 at 4, n.3].

## ANALYSIS

**I.  Applicable Law**

Defendant argues, under a contract theory, that both the policy and the appraisal agreement requires the selection of an impartial appraiser, and Plaintiff's failure to appoint an impartial appraiser requires the court to disqualify the appraiser and select a new one. *See* [#21]. "Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). In *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, Judge Babcock observed that neither the court nor the parties had located "any Colorado appellate authority construing the term [impartial] in the context of an appraisal provision," like the one therein at issue. Civil Case No. 14-cv-03417-LTB, 2016 WL 1321507, at *4 (D. Colo. Apr. 5, 2016) ("*Summit Park I*").[4] This remains the case. In looking to contract law and the definition of "neutral arbitrator" as set forth in the Colorado Uniform Arbitration Act, Colo. Rev. Stat. § 13-22-211, the *Summit Park* court ordered the appraisal process to proceed under guidelines that specified: "[a]n individual who has a known, direct, and material interest in the outcome of the appraisal proceeding or a known, existing, and substantial relationship with a party may not serve as an appraiser." *Id.* at *1, 4 (specifying in addition, "[e]ach appraiser must, after making a reasonable inquiry, disclose to all parties and any other appraiser any known facts that a reasonable person would consider likely to

---

[4] In *Summit Park I*, Judge Babcock disqualified Mr. Keys from serving as an appraiser and vacated the appraisal award. In a later issued order, Judge Babcock awarded sanctions against Plaintiff's counsel, Merlin attorneys, for unreasonable and vexatious conduct. *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 2016 WL 4132186, *supra* ("*Summit Park II*"). Appeals of both orders are pending before the Tenth Circuit Court of Appeals.

affect his or her impartiality…"). In arriving at a standard by which to review the appraisal process, the court referenced Colorado case law regarding the conduct of an arbitrator: an arbitrator must "exercise a high degree of impartiality, without the slightest degree of friendship or favor toward either party." *Id.* (quoting *Noffsinger v. Thompson*, 54 P.2d 683, 683 (Colo. 1936)). The *Summit Park* court also observed that "[e]vident partiality has been found when a reasonable person would have to conclude that an arbitrator would be predisposed to favor one party to the arbitration." *Id.* (quoting *McNaughton & Rodgers v. Besser*, 932 P.2d 819, 822 (Colo. App. 1996)).

Bella Vista contends that the Policy and Appraisal do not define "competent and impartial appraiser," and thus the court should adhere to the definition of "fair and competent" as provided by the Division of Insurance of the Colorado Department of Regulatory Agencies ("DORA"). [#23 at 1-2]. Bulletin B.5-26 specifies that a "fair and competent" appraiser: is "not a party to the insurance contract"; has "no financial interest in the outcome of the appraisal"; is "not a current employee of the insurer or policyholder"; and is "not a family member or an individual with whom the insured has a personal relationship that could reasonably suggest bias." [*Id.* at 2]; *see also* [#23-1]. Bulletin B.5-26 further instructs that an appraiser:

> may not have a direct material interest in the amounts determined by the appraisal process. The appraiser must disclose to all parties any known facts that a reasonable person would consider likely to affect an appraiser's interest in the amounts determined by the appraisal process, including any contingency arrangement related to payment of the appraiser

[*Id.*] Additionally, "[t]he appraiser shall have a continuing obligation to disclose to all parties to the appraisal process any facts the appraiser learns after accepting the appointment that a

9

reasonable person would consider likely to affect the appraiser's interest in the amounts determined by the appraisal process." [*Id.*]

## II.     The Parties' Arguments

For the reasons outlined above, Owners argues that Mr. Morrison is partial, and contends he has a "personal vendetta against property insurance companies." [#21 at 12].  In addition, Owners argues, Mr. Morrison failed to disclose known facts that a reasonable person would consider likely to affect the appraiser's impartiality, in contravention of the Agreement.  Finally, Owners questions Mr. Morrison's competency as an appraiser.  Owners asks the court to disqualify Mr. Morrison and appoint an appraiser in his place.  In the alternative, Owners asks the court to permit limited discovery "into Mr. Morrison's relationships and biases" as summarized in the Motion.  [*Id.* at 21].

Bella Vista responds that Mr. Morrison satisfies DORA's definition of "fair and competent" appraiser because he: disclosed all pertinent relationships; has no interest in the outcome of the appraisal award; is not a party to the insurance contract; is paid an hourly fee for his work; is not a current employee of the insurer; is not a family member of and does not otherwise have a personal relationship with the insured; and "has no business or personal relationship with the insured's representatives, aside from having been hired previously on appraisals, adjuster ad estimates, as disclosed." [#23 at 3].  Bella Vista further responds to Owners's specific objections as follows.  Whatever opinion Mr. Morrison holds of State Farm has no bearing on this particular case and his ability to act impartially.  [#23 at 9].  Mr. Morrison's marketing statements should not weigh against his ability to remain impartial, and DORA does not include such statements as criteria for determining whether an appraiser is "fair

and competent." [*Id.*] Plaintiff notes the distinction between public adjustors, such as Mr. Morrison, who typically provide estimates for policyholders, and "independent adjustors," who typically provide estimates for insurance companies. [*Id.*] *See also* [#21 at 6]; *Colorado Hospitality Services Inc. v. Owners Ins. Co.*, No. 14-CV-001859-RBJ, 2015 WL 4245821, at *2 (D. Colo. July 14, 2015) ("the 'public adjuster' represents the insured, whose interest is in establishing a greater loss than that determined by the insurance adjuster."). Plaintiff asserts that Mr. Morrison's professional affiliations do not demonstrate bias; and if they do, the same must be said for Owners's designated appraiser, Mr. Grant Trusler. [*Id.* at 10]. Plaintiff asserts that Mr. Trusler's company is a member of the Defense Research Institute, which advertises itself as "The Voice of the Defense Bar," and "the leading organization of defense attorneys and in-house counsel." [*Id.*] *See also* [#23-8]. Mr. Trusler's company is also "a donor/sponsor of the Colorado Defense Lawyers Association, and is a consistent sponsor of the Colorado Defense Lawyers Association's annual conference." [*Id.*] *See also* [#23-9; #23-10; #23-12]. Bella Vista argues that Mr. Trusler's bias notwithstanding, it did not object to the use of Mr. Trusler or his company because "any competent individual with experience in the insurance industry can be argued to bear a bias towards one side or the other." [*Id.*]

With respect to Owners's objection to Mr. Morrison's competency based on lapsed licenses and the like, Bella Vista asserts that Mr. Morrison "has been involved with over 40 appraisals in multiple states, including Texas and Colorado," has served as an umpire, and is currently involved with four appraisals in Colorado. [*Id.* at 11]. Plaintiff contends that Mr. Morrison's licenses in Oklahoma, Louisiana, and Mississippi are active. [*Id.*] *See also* [#23-13; #23-14; #23-15]. Mr. Morrison was listed on the TWIA roster as an approved umpire; his name

11

was removed because "he is working on a claim under a TWIA policy," and pursuant to TWIA rules, an appraiser working as a public adjustor on a TWIA claim cannot be listed as an umpire. [#23 at 11-12]; *see also* [#23-16]. As for Owners's characterization of Mr. Morrison's testimony before the Texas Senate Business & Commerce Committee, Bella Vista asserts that Mr. Morrison testified "on" the matter (rather than "in favor" or "against"), and thus presented testimony as a neutral witness. [#23 at 12]. *See also* [#23-18 at 71-72; #21-22 at 9]. Mr. Morrison testified in his role as President of the Texas Association of Public Insurance Adjusters, and spoke on the topic of TAPIA's "support for ethics in the industry, and statutory oversight." [*Id.* at 14]. Finally, Bella Vista takes pains to distinguish the relationship between Mr. Morrison and its attorneys from the relationship evaluated by Judge Babcock in *Summit Park*. *See* [#23 at 3-6].

Owners argues in its Reply that its counsel learned, after filing the Motion to Disqualify, that Mr. Morrison has previously served as a paid expert-witness for Plaintiff's counsel. [#24]. Owners represents that three days after its counsel filed the Motion to Disqualify, Plaintiff's counsel provided a supplemental disclosure from Mr. Morrison stating that he had "worked with various attorneys at the Barton Law Firm over the past 10 years on multiple claims as a cost estimator."[5] [*Id.* at 3]; *see also* [#24-3]. Plaintiff's counsel provided the supplemental disclosure on August 29, 2016, and explained that while he did not think that the "few times" Mr. Morrison wrote estimates for his firm "was news," it had come to his attention that defense counsel's office may not have received the supplemental disclosure due to confusion regarding this case

---

[5] Mr. Morrison and Owners's counsel refer to Plaintiff's counsel as the "Barton Law Firm," but the docket reflects that Messrs. Daniel Barton and Robert Green with the law firm of Robert Green & Associates, PC have entered appearances on behalf of Plaintiff.

and another case. [#24-4]. Counsel for Owners asserts that an investigation revealed that the Barton Law Firm had paid Mr. Morrison "as a regular retained expert witness, including in litigation." [#24 at 3]; *see also* [#24-5; #24-6]. Owners asserts that disqualification of Mr. Morrison is appropriate for the sole reason Bella Vista's counsel failed to disclose their business relationship with Mr. Morrison. Moreover, Owners argues, Plaintiff's counsel attempted to include in the Agreement an exception for expert work. The exception was not ultimately incorporated. *See* [#24-1].

Defendant also argues that Mr. Morrison activated his licenses in Louisiana, Mississippi, and Oklahoma only after Owners lodged its objections on August 9, 2016, and Plaintiff failed to address in its Response the discrepancies in Mr. Morrison's curriculum vitae and the WIND and IAUA records. To the extent Bella Vista attempts to impugn Mr. Trusler's impartiality, Defendant argues, Mr. Trusler "frequently agrees with the policyholder-side appraiser in his appraisal work." [#24 at 7]; *see also* [##24-14]. Finally, Owners argues that the DORA Bulletin relied on by Bella Vista is not the law and should not supplant the language of the Agreement.

### III. Findings of Fact and Conclusions of Law

#### A. Court's Authority to Disqualify Appraiser

Before I reach the Parties' respective arguments regarding the controlling law, I must address an issue that neither side raises, i.e., whether the court has authority, under the plain language of either the Policy or the Agreement, to disqualify Mr. Morrison at this juncture in the case. The Policy provides for an appraisal, but provides no mechanism for the court to address the failure of a party to select a "competent and impartial appraiser." [#21-1 at 2, ¶ E.1]. Instead, the Policy contemplates that the appraisers will jointly choose an umpire, and if they

13

cannot agree on an umpire, either may request that a court with jurisdiction select the umpire. [*Id.*].

The Agreement is equally silent as to the court's authority to disqualify an appraiser prior to the inception of the appraisal process. Instead, the Agreement requires the appraiser and counsel for whose client the appraiser has been retained, after making reasonable inquiry, to disclose any known facts that a reasonable person would likely consider to affect the appraiser's impartiality. [#21-2 at 2, ¶ 5]. That obligation is continuing throughout the appraisal process. [*Id.*]. The Agreement then provides that "[i]f an appraiser discloses a fact required to be disclosed pursuant to this paragraph and a party objects to the appointment or continued services of the appraiser the objection may be a ground for vacating an award made by the appraiser." [*Id.*]. The Agreement does not provide that an objection to the impartiality of an appraiser may be grounds for the court to disqualify the appraiser, or that the Parties have vested authority with the court to appoint an appraiser on either Party's behalf. [*Id.*].

The Parties' lack of assent to pre-appraisal disqualification of an appraiser and a court-appointed alternate is particularly striking given their express agreement as to a disagreement regarding the umpire. The Agreement specifically provides:

> [t]he standards for impartiality and disclosure obligations described in the preceding paragraph also apply to the umpire, *except that the parties shall raise any objections regarding a proposed umpire's impartiality or competency with the Court that has jurisdiction over the matter. Objections regarding the impartiality or competency of an umpire who has already been selected shall be raised in the manner specified in the preceding paragraph.*

[#21-2 at 2, ¶ 5] (emphasis added). The language of Paragraph 6 distinguishes the procedure by which objections to an umpire's impartiality prior to selection are addressed (i.e., with the court that has jurisdiction over the matter) from objections to an appraiser's impartiality, or an

14

umpire's impartiality after selection (i.e., they may serve as grounds for vacating an appraisal award). [*Id.*].

The Parties do not identify any source of authority for the court to intervene at this juncture to disqualify Mr. Morrison and appoint a replacement in his stead. Judge Babcock considered the impartiality of the appraiser in the context of vacating an appraisal award filed with the court. *See Summit Park I*, 2016 WL 1321507, at *7. Similarly, the *Colorado Hospitality* court considered the impartiality of the appraiser in the context of vacating the appraisal award. *See Colorado Hospitality Services*, 2015 WL 4245821, at *1. In the case of *Gold v. State Farm Fire & Casualty Co.*, No. 10-cv-00825-MSK-MJW, 2010 WL 3894141 (D. Colo. Sept. 30, 2010), the parties stipulated to the court's jurisdiction to resolve the underlying disputes regarding the appraisal process, in absence of a contractual provision. [*Id.* at *1; ECF No. 26]. No such written stipulation exists in this case; and this court is hesitant to infer such authority in light of the plain language of the Agreement as discussed above.

### B. Question of Impartiality

Even assuming authority, this court finds on the record before it that the question of Mr. Morrison's disqualification is premature. In *Summit Park*, the court determined that plaintiff's appraiser, Mr. Keys, was not impartial, and that plaintiff and Mr. Keys's "failure to disclose material information regarding, among other things, Keys' extensive relationship with [plaintiff's] counsel, violated [the court's] order requiring disclosure of facts that a reasonable person would consider likely to affect an appraiser's impartiality." *Summit Park*, 2016 WL 1321507, at *1. In so finding, Judge Babcock considered that plaintiff's counsel, an attorney with Merlin, had affirmatively represented that his law firm had no significant prior business

15

relationship with Mr. Keys, and that Mr. Keys had only acted as a public adjustor and/or appraiser on behalf of certain policyholders represented by Merlin. When counsel for defendant requested specific disclosures concerning the nature of Mr. Keys's relationship with Merlin and the policyholders, neither Mr. Keys nor plaintiff's counsel responded. Then, after the court issued its disclosure order, Mr. Keys emailed counsel for defendant reiterating that he had no substantial business relationship or financial interest in Merlin. *Id.* at \*2. The record before the court ultimately demonstrated that Merlin had represented Mr. Keys personally in two lawsuits, filed articles of incorporation on behalf of a public adjusting business for which Mr. Keys served as vice president, served as that company's registered agent for 10 years, and served as registered agent for the business through which Mr. Keys was rendering services in the lawsuit. *Id.* at \*3. Additionally, Mr. Keys and attorney Chip Merlin founded FAPIA, whose stated mission, the court recognized, "is to protect policyholders and the public adjusting profession." *Id.* The record further demonstrated: in 33 cases, Mr. Keys had served either as an appraiser or expert witness for a client represented by Merlin; Mr. Keys commented on his website that he was "dedicated…to being a voice for policyholders in property insurance claims"; and plaintiff had retained Mr. Keys in the action on a contingency agreement. *Id.* at \*3-4. In finding that Mr. Keys was other than impartial, the court considered that he had not only worked on dozens of prior cases with Merlin attorneys, but Merlin attorneys had served as his personal counsel and as incorporator and registered agent for his companies, had taught seminars with him, and had "donated to a Keys-led group involved in pro-policyholder lobbying." *Id.* at \*5. The court concluded that Mr. Keys's relationship with Merlin was sufficient in and of itself to render him

16

other than impartial, and that the totality of the circumstances made "this conclusion unavoidable." *Id.*

The record before this court does not evidence a similar relationship between Mr. Morrison and Plaintiff's attorneys. While the Motion to Disqualify discusses in great detail Mr. Morrison's relationship with Merlin—a law firm that has not entered its appearance in this action and, as far as the court is informed, has no involvement in this lawsuit—it does not set forth an analogous relationship between Mr. Morrison and Bella Vista's counsel. *See* [#21 at 7, 14]. The undersigned indicated her concern during the hearing that Mr. Morrison and Plaintiff's counsel had failed to identify the prior instances where Mr. Morrison had been retained by Mr. Barton. But the evidence presented at this point does not lead this court to conclude that the relationship between Mr. Morrison and Plaintiff's attorneys necessarily prevents Mr. Morrison from maintaining impartiality. Indeed, the mere fact that Mr. Morrison has been previously retained by Plaintiff's counsel (even multiple times) does not, in and of itself, lead to disqualification. *See Colorado Hospitality Services*, 2015 WL 4245821, at *2 n.2. Nor does the fee agreement provide a basis to conclude that Mr. Morrison has a financial interest contingent upon the substantive outcome of the appraisal, unlike the one at issue in *Summit Park I*. 2016 WL 1321507, at *5. *See also Colorado Hospitality Services*, 2015 WL 4245821, at *2, n.2 (vacating appraisal award made by an appraiser whose fee was capped at "5% of the replacement cost value of the final claims if an umpire is involved.").

This court finds, as Judge Babcock found in *Summit Park I*, that the "numerous comments" made by the selected appraiser are material and suggest "a bias in favor of policyholders." *Summit Park I*, 2016 WL 1321507, at *5. Mr. Morrison holds himself out as an

advocate for policyholders, *see* [#21-7; #21-8], and he has spoken at seminars sponsored by Merlin and has presented at TAPIA conferences. *See* [#21-12 at 2]. This court also takes into account Mr. Morrison's affiliation with UP. *See Summit Park I*, 2016 WL 1321507, at *5 (considering Mr. Keys and Merlin's involvement together in specific pro-policyholder lobbying). There is no question that Mr. Morrison and/or Plaintiff's counsel should have been more forthcoming in disclosing "any known facts that a reasonable person would consider likely to affect the appraiser's impartiality, including…a current or previous relationship with any of the parties (including their counsel or representatives)." [#21-1 at 2, ¶ 4]. And their failure to affirmatively disclose this information, whether intentional or inadvertent, has cast doubt on Mr. Morrison's impartiality. *See Axis Surplus Ins. Co. v. City Center West LP*, No. 2015 CV 30453 (Colo. Dist. Ct. Weld Cnty. Mar. 14, 2016) ("Instead of being aboveboard and demonstrating his neutrality, [the appraiser's] nondisclosure only raises suspicions about his impartiality and creates the appearance that he was trying to hide" the damaging information).

Nevertheless, this court does not find in the record at this time an adequate basis to disqualify Mr. Morrison. Although not controlling or exclusive, Bulletin B.5-26 is instructive. Guided by the Bulletin's language, this court considers that Defendant has not established that Mr. Morrison is a party to the insurance contract, has any financial interest in the outcome of the appraisal, is a current employee of the insurer or policyholder, or is a family member or an individual with whom the insured has a personal relationship that could reasonably suggest bias. There is also no evidence before the court that Mr. Morrison has any type of relationship with Plaintiff's counsel other than serving as an appraiser or an expert witness. While Owners raises

valid questions regarding the timing and terms of the fee arrangement,[6] those questions, without more, do not persuade this court that the facts regarding impartiality are so clear and unequivocal that the court should intervene and thus sidestep the procedure to which the Parties agreed, i.e., one or both Parties may move to vacate the appraisal award where impartiality is questioned. Moreover, there is no evidence (nor could there be at this pre-appraisal stage) that Mr. Morrison utilized improper methods, considered flawed information, or engaged in prohibited communications with the insured or counsel in reaching an appraisal amount. *See Gold*, 2010 WL 3894141, at *1. Indeed, the Parties can only speculate at this point that their appraisers will disagree as to the amount of damage and to what extent they will disagree. And while Mr. Morrison's statements and marketing activities give this court pause, I decline to conclude that Mr. Morrison is necessarily disqualified as impartial due to his professional affiliations and personal experience developed to date. Therefore, while prudence and this court's concerns as articulated herein might guide Plaintiff to select a new appraiser so as to avoid future litigation over Mr. Morrison's impartiality, this court respectfully **DENIES** Defendant's Motion to Disqualify. In so ruling, this court expressly refrains from passing on whether Defendant's objections to Mr. Morrison may justify moving to vacate the appraisal award.

As to Owners's request in the alternative for further discovery, *see* [#21 at 15], I find that such a request is premature at this time. Discovery into this topic at this time, presumably

---

[6] Defendant relies upon the fact that the fee agreement was not executed until after the hearing as a further basis to show bias. [#40 at 2]. Plaintiff's counsel represents in his correspondence submitting the fee agreement that he received the hourly fee agreement on July 21, 2016 and forwarded it to the client on July 24, 2016. [#39 at 1]. This court will accept the representation of counsel, an officer of the court, as true and accurate. In addition, Mr. Morrison attests that "[t]he appraisal agreement is the only agreement regarding payment or compensation of any kind in this case," that he does not "currently have, nor [has he] at any time had a direct or indirect contingent interest in this case." [#39 at 9-10].

followed by a renewed Motion to Disqualify, simply serves as an unnecessary distraction from an already-delayed appraisal process that may or may not result in a concrete dispute.  Owners may renew its request for discovery, if appropriate, after the appraisal process has concluded.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

1. The Expedited Motion to Disqualify Clay Morrison From Serving as an Appraiser [#21] is **DENIED**, without prejudice to Defendant's ability to raise objections to Mr. Morrison's impartiality in a motion to vacate the appraisal award.

DATED: November 29, 2016              BY THE COURT:


                                       s/Nina Y. Wang_____
                                       United States Magistrate Judge