IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1018-WJM-NYW

OWNERS ASSOCIATION OF THE BELLA VISTA VILLAS, INC.,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.
_____

**ORDER DENYING PLAINTIFF'S MOTION TO RE-OPEN AND FOR APPOINTMENT OF AN UMPIRE, AND *SUA SPONTE* REQUIRING MEDIATION**
_____

In this insurance case, Plaintiff, Owners Association of the Bella Vista Villas, Inc., brings claims against Defendant, Owners Insurance Company, for breach of contract, common law bad faith denial of insurance benefits, and unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 & -1116. (*See generally* ECF No. 1.) Now before the Court is Plaintiff's Opposed Motion to Re-Open and for Appointment of an Umpire. (ECF No. 45.) For the reasons explained below, the motion is denied.

### I. BACKGROUND

This case arises from "wind and/or hail storm" damage to Plaintiff's property located in Centennial, Colorado, and the ensuing dispute over Defendant's handling of Plaintiff's claim(s) under its property insurance policy. (*See* ECF No. 1 ¶¶ 7–15.) That policy includes the following term governing appraisal of a claimed loss:

    If we [*i.e.*, Defendant] and you [*i.e.*, Plaintiff] disagree on the

> value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and the umpire equally.
>
> If there is an appraisal, we [Defendant] will still retain our right to deny the claim.

(ECF No. 20-3 ¶ E.2. (the "Appraisal Clause").)

In its Complaint, Plaintiff sought to "compel appraisal" under this clause. At that time, Plaintiff alleged Defendant had "delay[ed] appraisal by objecting to [Plaintiff's] chosen appraiser," based on alleged bias, and that Defendant's objection forced Plaintiff to file suit. (*See* ECF No. 1 ¶¶ 18, 28–36.)

Evidently, the parties were able to resolve this objection, however, since on June 30, 2016, they jointly sought to administratively close this case, representing they had "negotiated . . . an agreement to govern the appraisal process, which will allow the Parties to determine the disputed, unpaid amount of loss, if any exists, before proceeding to any litigation of the Plaintiff's claims." (ECF No. 18 ¶ 2.) The parties represented this agreement would "permit counsel to work collaboratively," and "complete the appraisal in an orderly and efficient fashion." (*Id.* ¶ 3.) In reliance on these representations, this case was administratively closed, "subject to reopening for good cause shown, which may

include, but is not limited to, a disagreement between the appraisers on the appointment of an umpire." (ECF No. 19.)

Unfortunately, although the parties did enter an "Agreement Governing the Appraisal Process" (ECF No. 20-1 (the "Appraisal Agreement")), their promises of working collaboratively and of an "orderly and efficient" process were soon broken.

On August 26, 2016, Defendant sought to re-open the case for the Court to hear its "Expedited Motion to Disqualify" Plaintiff's new appraiser (who differed from the appraiser to whom Defendant had previously objected at the time of the complaint). (ECF No. 21.) In opposing disqualification, Plaintiff argued, in part, that Defendant's appraiser was equally biased. (ECF No. 41 at 11; ECF No. 23 at 10.)

The Court re-opened the case to take up the motion to disqualify. On referral from the undersigned, U.S. Magistrate Judge Nina Y. Wang denied the request for disqualification, recommending the case once again be administratively closed to complete appraisal. (ECF Nos. 41, 42.) Judge Wang reasoned, in part, that while the insurance policy's Appraisal Clause contemplates selection of an "impartial" appraiser, that term is not defined, and the policy does not provide "what procedure is applicable to challenge the selection of an appraiser," nor "what authority a court has to disqualify an appraiser." (ECF No. 41 at 4.) Judge Wang explained that the parties' Appraisal Agreement also failed to correct these omissions, and that there is a lack of "any Colorado appellate authority construing the term [impartial] in the context of an appraisal provision." (ECF No. 41 at 89 (citing *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 2016 WL 1321507, at *4 (D. Colo. Apr. 5, 2016)).)

3

Further, Judge Wang observed that in order to resolve Defendant's motion to disqualify, she would need to "address an issue that neither side raises, *i.e.*, whether the court has authority, under the plain language of either the Policy or the [Appraisal] Agreement, to disqualify [Plaintiff's appraiser] at this juncture." (ECF No. 41 at 13.) She correctly noted that both the insurance policy and the Appraisal Agreement are silent regarding the Court's authority to disqualify an appraiser. (*Id.*) The Appraisal Agreement provides that in the event one party objects to certain disclosures by the other party, "the objection may be a ground for *vacating* an award made by the appraiser," but that "[t]he [Appraisal] Agreement does not provide that an objection to the impartiality of an appraiser may be grounds for the court to disqualify the appraiser, or that the Parties have vested authority with the court to appoint an appraiser on either Party's behalf." (ECF No. 41 (quoting ECF No. 20-1 ¶ 4).) Given her review of the contracts and the parties' filings, Judge Wang correctly observed that "[t]he Parties do not identify any source of authority for the court to intervene at this juncture." (ECF No. 41 at 15.)

Nevertheless, while noting she was "hesitant to infer such authority" Judge Wang determined that the record presented was insufficient to disqualify Plaintiff's appraiser in any event (*id*. at 18), so although Defendant's allegations of bias gave Judge Wang pause, she "decline[d] to conclude that [he] is necessarily disqualified," while warning that "[p]rudence and this court's concerns . . . might guide Plaintiff to select a new appraiser so as to avoid future litigation over [his] impartiality" (*Id*. at 19). Defendant's Motion was therefore denied while "expressly refrain[ing] from passing on whether Defendant's objections. . . . may justify moving to vacate the appraisal award." (ECF No. 41 at 19.) Lastly, Judge Wang denied as premature Defendant's alternative request for discovery

relating to the issues raised, noting this "simply serves as an unnecessary distraction from an already-delayed appraisal process that may or may not result in a concrete dispute." (*Id.* at 19–20.)

Neither party objected to Judge Wang's rulings, and the case was again administratively closed to permit the parties to move forward with the appraisal process. (ECF Nos. 43, 44.) Plaintiff selected another appraiser, Mr. John Minor. He and Defendant's appraiser, Mr. Grant Trusler, then selected an umpire, Mr. Nick Lovato, executing a written "Selection of Umpire" on February 13, 2017. (ECF No. 47-1.) However, the parties' promise of a collaborative and efficient process again collapsed soon after, when Plaintiff and Mr. Minor sought to withdraw their agreement to Mr. Lovato. (*See* ECF Nos. 45-7, 47-8.) Defendant objected to removing Mr. Lovato or choosing a different umpire, leading Plaintiff to file the present motion, which seeks to have the Court remove Mr. Lovato and appoint a different umpire. (*See generally* ECF No. 45; *see also* ECF Nos. 47, 47-4.) In addition, Plaintiff has docketed its own objections to Mr. Trusler. (*See* ECF No. 48.)[1]

## II.  ANALYSIS

Plaintiff's instant Motion fails for two insurmountable reasons.

**A.     Court Authority**

Neither party has grappled with the import of Judge Wang's wholly correct reasoning that their private contractual agreements do not either expressly or implicitly provide authority for the Court to intervene at any and every stage of their appraisal

---

[1] Plaintiff's Objection to Mr. Trusler is not a motion that seeks any form of relief from the Court, and the Court takes no action on it.

process. (*See generally* ECF No. 41 at 13–15.) Both parties seem to assume that the existence of their private contractual agreements means they may ask the Court to babysit the parties' month-to-month performance under the terms of those agreements at any time and on any terms to which the parties have agreed. Certainly, the Court might choose to grant a request to select an umpire, and in many cases that would be a reasonable exercise of the Court's powers and jurisdiction, in service of the "just, speedy, and inexpensive determination" of the cases before it. *See generally* Fed. R. Civ. P. 1 & 7(b). But nothing about the parties' private contracts provides that the Court either can or should resolve every squabble arising between private parties during the course of their commercial contractual relationship, just because they have a related lawsuit pending.

If the parties want a private arbitrator to resolve their disputes, they may select, hire, and pay one. If they want relief from a federal court, they must seek it under relevant state and federal law and abide by the Federal Rules of Civil Procedure. The parties might, for example, pursue claims and defenses related to breach of contract, including claims that one or both sides have breached the terms of the Appraisal Clause. They might seek the injunctive remedy of specific performance of contract, or even the extraordinary remedy of preliminary injunctive relief during the pendency of litigation (if they believe in good faith that they can meet the very high standard for such relief). Here, Plaintiff has not sought a specific performance remedy, and its pending legal claims remain in only the earliest stages of litigation. (*See* ECF No. 1 ¶¶ 46–47; *id.* at 11, ¶ 2; ECF No. 18.) Plaintiff does not appeal to Rule 65, nor cite any other authority authorizing (much less requiring) the Court to *order* Defendant to behave in any particular way before the disputed claims in this case have been adjudicated. Nor has Plaintiff come anywhere

close to meeting the high standard for obtaining preliminary injunctive relief. *See, e.g., Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("simple economic loss usually does not . . . constitute irreparable harm").

In short, despite Judge Wang's prior Order raising this issue in detail, Plaintiff fails to provide any convincing basis on which the Court might grant the relief Plaintiff seeks in the present posture. As was true with Judge Wang's Order more than a year ago, the Court is more than a little "hesitant to infer such authority." (ECF No. 41 at 15.)

**B.     Contract Analysis**

Even if the Court were to accept the parties' assumption that the Court can interject itself in their appraisal process at this time, Plaintiff's arguments are misplaced.

Plaintiff relies on the Appraisal Clause, which provides that "[i]f [the appraisers] cannot agree [on an umpire], either may request that selection be made by a judge of a court having jurisdiction." (ECF No. 20-3 ¶ E.2.) However, the appraisers here *did* agree on an umpire. (ECF No. 47-1.) Plaintiff seeks to withdraw from that agreement. (ECF No. 47-11.) Since the parties have already selected an umpire (by formal written agreement, no less), and since no explicit terms govern withdrawal from that agreement, the Appraisal Clause does not provide Plaintiff with a right to judicial selection of a different umpire at this time.

Rather than the Appraisal Clause, the most pertinent term found in the parties' contracts is found in Paragraph 5 of the Appraisal Agreement: "Objections regarding the impartiality or competency of *an umpire who has already been selected* shall be raised in the manner specified in the preceding paragraph." (ECF No. 21-2 at 2, ¶ 5 (emphasis

7

added).)  Relying on this term, however, Plaintiff's Motion fails for at least two reasons.

*First*, Plaintiff does not actually object to Mr. Lovato on grounds of "impartiality or competency."  Plaintiff and its appraiser, Mr. Major, seem to object to the timing of when they received certain disclosures regarding Mr. Lovato's prior work with Defendant's appraiser.  But this does not, by itself, support a claim of impartiality or incompetence.  Mr. Major has stated, to the contrary, that he "do[es] not feel . . . that Mr. Lovato is disqualified" on this basis.  (ECF No. 47-11.)  Plaintiff's Motion does not raise any other claim of impartiality or incompetence, instead relying solely on the Appraisal Clause.

*Second*, although Paragraph 5 of the Appraisal Agreement states that objections to an already-selected umpire "shall be raised in the manner specified in the preceding paragraph," the preceding paragraph does not set out any such "manner" for raising objections.  Paragraph 4 obligates the appraisers to make certain disclosures regarding impartiality, and Paragraph 5 makes those terms applicable to the umpire.  (ECF No. 20-1 at 2 ¶¶ 4–5.)  As relevant, here, the Agreement provides that "[i]f an [umpire] discloses a fact . . . and a party objects to the appointment or continued services of the [umpire] the objection *may be a ground for vacating an award*."  (*Id.* (emphasis added).)  Thus, the Appraisal Agreement does not actually set any *procedure* for how to raise objections.  More importantly, it also does not provide a means to remove a sitting appraiser or umpire, no matter how the objections are raised.  Rather, what the Agreement provides—no more , and no less—is that the *consequence* of an objection under Paragraph 4 is that it "may be a ground for *vacating an award*."  (*Id.* (emphasis added).)  It says nothing of disqualifying or replacing either an umpire or appraiser.  Thus, while

either party might raise objections as to impartiality as a basis for vacating an appraisal award once it is reached, the Appraisal Agreement does not seem to provide any mechanism to remove an umpire, once selected. That is precisely the same conclusion Judge Wang reached regarding removal of an appraiser, after reviewing the very same contract provisions. (ECF No. 41 at 13–15.) Plaintiff did not object to that conclusion at the time (when it favored Plaintiff's position), and fails to heed it now. Given these contract terms, even if the Court were inclined to intervene in the parties' disputes at this time, Plaintiff's Motion would be denied.

## III. MEDIATION REQUIRED

Defendant's observation that the appraisal process in this case "has been plagued by irregularities" is a gross understatement, and also fails to acknowledge Defendants' own contributions to the dysfunction and contentiousness that have stalled resolution of the parties' dispute in this forum.

"Like the arbitration remedy, appraisal is designed to be consistent with the public policy of *discouraging* litigation." 15 Steven Plitt *et al.*, *Couch on Insurance* § 209:8 (3d ed., June 2017 update) (emphasis added). "The purpose of a provision for [appraisal] in an insurance policy is to provide a plain, speedy, inexpensive and just determination of the extent of the loss." *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1103 (D. Colo. 2015) (quoting 46A C.J.S. *Insurance* § 1889 (2015)) (appeal pending). Unfortunately, in this case, poor drafting, an ill-conceived appraisal process, and some combination of undue gamesmanship, bad faith, stall tactics, and overall contentiousness have utterly defeated these goals. Rather than using appraisal to

*reduce* the number and complexity of issues for litigation, the parties have turned the appraisal process itself into an opportunity to multiply their disputes and to manufacture additional issues requiring judicial resolution.

As a consequence, so far as the Court can discern, although this case presents entirely straightforward insurance claims of a type the Court sees every day, it is no closer to resolution today than when it was filed more than 18 months ago. This state of affairs—which the Court finds overwhelmingly of the parties' own making—is unacceptable and will no longer be tolerated. *See generally* Fed. R. Civ. P. 1.

The Court will therefore not re-open this case for any further judicial proceedings unless and until (a) the appraisal process is entirely concluded (whether because a decision has been reached or because the parties have abandoned the process), *and also* (b) the parties certify to the Court that they have participated in a meaningful and good faith effort to resolve all claims and defenses (and attendant damages, attorney's fees and costs issues) in this case before a mediator experienced in the resolution of commercial insurance disputes.

## IV.  CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1. Plaintiff's Opposed Motion to Re-Open and for Appointment of an Umpire (ECF No. 45) is DENIED;

2. This case REMAINS ADMINISTRATIVELY CLOSED; and,

3. This case may only be re-opened upon a showing of *substantial* good cause. In the circumstances of this case, this means that the Court will not consider re-

opening the case unless and until the parties file a certification that they have complied with *both* conditions precedent to the re-opening of this action, as set forth in this Order.

Dated this 7th day of December, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge